## School Employes' Retirement

JACKSON, Deputy Attorney General, October 30, 1946.—We are in receipt of your request for advice concerning the right of the Public School Employes' Retirement Board to adopt new mortality tables for employes in school service, and new mortality tables and new rates of contributions for employes entering school service on or after September 1, 1946. Specifically you ask the following questions:

1. May the Public School Employes' Retirement Board adopt new mortality tables to apply to all school employes retiring after September 1, 1946?

2. May the board adopt new contribution rates for all employes entering school service on or after September 1, 1946?

3. May the board adopt new contribution rates for employes in school service prior to September 1, 1946, and who are in school service thereafter?

4. May the board permit employes who are in school service prior to September 1, 1946, and who are in service thereafter to make lump sum payments at certain ages in order to have the "employes' annuity" equal the standard prescribed in section 8, par. 6, of the act?

5. May the board adopt new contribution rates for payments to the School Employes' Retirement Fund by the State and by local school districts as recommended by its actuary to provide funds required by the increase in life expectancy and the increase in salaries?

You state that as a result of the last five-year investigation and valuation of the retirement system made by the actuary of the board in accordance with section 4, par. 7, of the School Employes' Retirement Act of July 18, 1917, P. L. 1043, and as recommended by the actuary, the board adopted new mortality tables and new rate contributions for employes entering school service on or after September 1, 1946.

You further state that the retirement board decided to permit school employes in service prior to September 1, 1946, to contribute to the system at the new rates based on their present ages and also to contribute lump sum payments in certain cases.

The old and new rates are discussed in an article appearing in the October 1946 issue of the Pennsylvania School Journal, entitled "Retirement Board Announces Increase in Rates", wherein it is stated:

". . . Studies by the actuary in his recent five-year evaluation, as required by law, show that teachers are

living longer after retirement than was anticipated when the retirement act was established. This means that the employe's annuity must be spread over a longer period of years. To illustrate, previous to the recent evaluation and with the use of the former mortality tables $10.001 bought an employe's annuity of $1 for a man who retired at age 62. Under the new mortality tables which show a longer period of life after retirement, $10.604 is required to purchase an annuity of $1 for such a man.

"Similarly it requires $11.923 to purchase an annuity of $1 for a woman retiring at age 62 as compared with the previous cost of $11.338. It is obvious, therefore, that as the cost of the annuity increases due to longer life expectancy a larger amount must be available in accumulated deductions and interest to maintain the given standard of 1/160 of the average salary for the last ten years multiplied by the number of years of membership in the system. It is for this reason that it was necessary to revise upward the rates of contribution for new members entering the system."

The smaller amount, therefore, that an employe receives as an annuity after retirement is brought about by the fact that today people, and particularly teachers, are living longer. The same amount is paid out to the annuitant but, since he lives longer today than he did five years ago, the yearly amount would be less than when he had a shorter life expectancy.

Thus, it would seem that for employes in service prior to September 1, 1946, the board intends to apply the new mortality tables and to give such employes the option of contributing under the old or new rates of deduction.

We have no doubt that the board has ample authority to make an actuarial investigation every five years

and on the basis of such investigation to make a valuation of the various rates created by the act. This is pursuant to section 4, par. 7, of the Act of July 18, 1917, P. L. 1043, as amended by the Act of May 14, 1929, P. L. 1738, which provides:

"7. In the years nineteen hundred twenty-one and nineteen hundred twenty-four, and in every fifth year thereafter, the actuary of the retirement board shall make an actuarial investigation into the mortality and service experience of the contributors and beneficiaries as defined in this act, and shall make a valuation of the various accounts created by this act, and, on the basis of such investigation and valuation, the retirement board shall—

"(a) Adopt for the retirement system one or more mortality tables and such other tables as shall be deemed necessary;

"(b) Certify the rates of deduction from salary necessary to pay the annuities authorized under the provisions of this act; and

"(c) Certify the rates of contribution, expressed as a percentage of salary of new entrants at various ages, which shall be made by the Commonwealth to the School Employes' Retirement Fund and credited to the contingent reserve account."

The last sentence of section 8, par. 6, of the aforesaid act, as amended July 12, 1935, P. L. 698, provides:

"The rate percentum of said deduction from salary shall be based on such mortality and other tables as the retirement board shall adopt, together with regular interest, and shall be computed to remain constant during the prospective school service of the contributor."

It has been pointed out that an interpretation of this sentence places emphasis on the term "computed"

rather than on the phrase "constant during the prospective service of the contributor". This may be an actuarial interpretation but is one with which we cannot agree.

School teachers and employes of the various school districts throughout the Commonwealth enter service under a definite contract. Part of that contract is the law of the Commonwealth with reference to their joining the school employes' retirement system. The law is mandatory and they may not become employes of a school district or any institution to which the act applies, without becoming members of the retirement system. We recognize that at the time of their employment, it would be impossible for them actually to compute the amount that they would receive on retirement at age 62. But under the law they are entitled to believe that during the course of their service they will receive the various increments in salary which the law provides. The Retirement Act spells out a formula, therefore, relative to mortality tables in existence at the time the employe joined the system and also as to rates of deduction from the salary of such employe. We do not believe that the formula or the rules can be changed in the middle of the game.

We believe, therefore, that a fair and just interpretation of section 4, par. 7, of the School Employes' Retirement Act, confines its provisions to employes entering the service after the actuarial investigation is made and the new tables and rates have been adopted; that under section 8, par. 6, of said act, as well as the Constitution of Pennsylvania, the rates must remain constant during the prospective school service of the contributor; and that the computation must be made on mortality tables in effect at the time of employment.

We recognize that over the course of years some hardship may be occasioned to the system and its ad-

ministration but it is also our opinion that any deficiency occasioned by the fact that people live longer or that salaries have been increased beyond that which was contemplated at the time of the passage of the act, is the obligation of the Commonwealth. Authority for this position, we believe, is contained in the language of section 10 of the Act of July 18, 1917, P. L. 1043, as amended by the Act of May 14, 1929, P. L. 1738, which provides:

"Regular interest charges payable, the creation and maintenance of reserves in the fund created by this act to the credit of the contingent reserve account, and the maintenance of employes' annuity reserves and State annuity reserves as provided for in this act, and the payment of all retirement allowances and other benefits granted by the retirement board under the provisions of this act are hereby made obligations of the Commonwealth of Pennsylvania."

The foregoing reasoning applies with equal force to the lump-sum payments which are permitted by the act and also to the authority of the board to alter the rates of employers.

For the above reasons it is our opinion, and you are accordingly advised:

1. That new mortality tables may apply only to school employes who are employed on or after September 1, 1946.

2. That the board has the right to adopt new contribution rate tables for employes who enter service after September 1, 1946.

3. That the board may not change the contribution rates for employes who are in school service prior to September 1, 1946, and who are in school service thereafter.

4. That the board likewise may not alter the amount of lump-sum payments of employes in service prior to September 1, 1946.

5. That the board may not adopt new contribution rates to be paid to the School Employes' Retirement Funds by the State and local school districts. This must be done by the General Assembly.